Whenever counsel's ready, we're ready to hear argument in Anderson v. DeHart. I'm sorry, USA v. Grant. Anderson v. DeHart. Mr. Anderson. Judge, I'm pleased to report that I am not incarcerated, so yes. Yet. Yes, so we'll see if the marshals let me out of the building when we're done. My name is Howard Anderson, a CGA counsel for Mr. Grant. As Your Honors know from the brief, there are several issues here in the case, and I'm happy to go in whatever order the Court wants. But I guess the big issue that the parties spend most of their time talking about is, did Congress mean what it says when it said that except for a sentence of imprisonment of five years, that possessing a gun in a school zone is a misdemeanor, or is the government right that the government gets to redline in the statute and say, well, also for the purposes of supervised release and the special assessment? So that's one big issue. Is it clear that the supervised release term should be less than one year? Should it be one year or should it be five? Is that clear from the statute? Judge, I would submit that it is crystal clear to me when looking at it that when Congress says except for this one thing, then Congress means except for this one thing. And to the extent that there is any ambiguity in the statute, which the government says, I think that Mr. Grant still wins, because under the rule of lenity, if you can read a statute two ways, one of which is more favorable to the defendant than otherwise. Does the rule of lenity apply when we're on plain error review where you have to show that it's an obvious error? I was confused about that. Well, Judge, this is not the typical plain error review like, you know, is something hearsay or not. This goes to, I think, the statutory jurisdiction of the court to impose a sentence. So it's — I would submit that I think the Fifth Circuit says, well, in this context, it's more like a de novo review trying to figure out exactly what the jurisdiction of the court is. And I would say that, you know, we always read jurisdictional statutes narrowly, that if there's any doubt about is there jurisdiction, the answer is no until there's an affirmative grant. And here, I just don't see how you can look at the statute and say that it is crystal clear that when Congress said except for this one thing, Congress also meant except for two other things. And so if there's any ambiguity, then I think that that applies here. This Court didn't have jurisdiction to impose that. And if Congress doesn't like that, of course, it can fix the statute that's, you know, not the best written statute. But it still becomes a plain error rule, doesn't it, in terms of whether how do we assess this now where it was not presented to the district judge? And haven't there been other cases where the supervised release terms have been interpreted the same way this district judge did it many times? Judge, what I would say is, at least in my experience, supervised release and special assessments don't drive the bus at sentencing. What folks tend to care about is the imprisonment. And I've done three of these CJA cases where there have been problems with the supervised release, because everybody's focused on years' imprisonment, not supervised release. And so, you know, again, I don't represent nearly as many defendants as the government prosecutes in a year, and so I think they're much better able to tell you, has anybody else anywhere in the United States ever raised this issue? I think counsel and I agree that the only published opinion that we've seen affirmatively not reaching the issue is this case from the First Circuit. But in terms of practical effect, you know, and efficiency for the taxpayer, we can either reach it now and say it either does or doesn't apply, or we can go to 2255, have a whole separate hearing. You know, and to me, that doesn't seem to be in anybody's interest here. It's already briefed. It's before the Court. In that First Circuit case, they declined to reach it because counsel, I guess, you know, didn't want it at all. Here we've got, as Your Honors know, probably more briefing than you wanted on it, and so it's certainly ripe for review. And again, because this goes to the jurisdiction of the Court, this is not like your other types of plain error where it's clear the district judges can admit hearsay or not or whatever. I've cited lots of cases in, I think, footnote 5 of my reply, saying that if you've got an illegal sentence, that that is always plain error, because, you know, in our case, it's not. So the sentence is illegal because the stupefied release term exceeds the statutory requirement. Yes, Your Honor. Yes, Your Honor. And that's typically any illegal sentence can be reviewed any time, is that right? Well, not in the sense of, well, you misapplied the guidelines, and so you're still within the statutory maximum. Here it's the district judge has applied a sentence greater than what Congress has authorized to do, so I think this is what makes it different than a normal sentencing guidelines case. And so, again, I've cited, I think, six or seven courts of appeals that say that Can I ask you about that? Because I wasn't clear on, I know there are a lot of cases saying that for the fourth prong of plain error review, maybe the third, too, whether this really affects substantial rights in a way that's going to call into question the integrity of the proceedings, absolutely. A sentence that exceeds the statutory maximum, it passes that prong. I wasn't clear that we had held, the courts have held, that when on the first prong, is the error obvious and plain that we, that it makes a difference whether the sentence is in excess of a statutory maximum. And, Judge, in the, I think it's the Eleventh Circuit case that I cite, they say that a sentence above the statute is a jurisdictional problem for the court. And, again, I would just come back to this Court's holdings on appeal waivers, where you cannot affirmatively ever waive your right to challenge an illegal sentence. And given that intentional waiver can't stop this Court from reviewing it, I fail to see how everybody just missed it, and so somehow you all are precluded from reaching it. If you all are not going to reach it, I would just ask you to please make clear that Mr. Grant can challenge it in a 2255 motion. But, again, to me that seems like a waste of taxpayer money to have to go back and Because there are no other facts that we need to resolve this thing. I mean, it's not, either the Court has jurisdiction or it doesn't have jurisdiction. So I don't know that we need more record in a 2255. But if you're not going to let Mr. Grant reach the issue on the merits, I'd just please make clear that it's without prejudice to his rights to raise it under 2255. What about the special assessment? Is it $100 or what is it? Right. Well, I mean, again, Judge, Congress said it's a misdemeanor. And so in the classification scheme for special assessments, we know that only felonies are $100. And so misdemeanors are between $5 and I think it's $50, something like that. But this sentence doesn't fit in any of those misdemeanor classifications. And, you know, why Congress chose to write the statute this way, you know, I don't know. But that's what Congress wrote. And so I would say that because it doesn't fit in any of them, the rule of lenity applies and says, you know, well, Congress has not authorized the collection of this money, therefore we can't collect it. And so, again, you know, if Congress wants to tweak it, you know, that's fine. But this doesn't fit into any of the misdemeanor classifications. I guess just turning briefly to the sentence that was imposed here of incarceration, as I pointed out, we sort of have some procedural errors and, of course, a substantive error. And I would just say that if I'm right that the district court should not have issued this much of supervised release, I think that's a guidelines error and an appropriate result is to send it back to the district court to reevaluate the entire sentencing package. And that would moot you all having to address all the other issues that I raised because we can fix them there at the new sentencing hearing. Well, let's focus for a second on the sentencing. The government gave the defendant notice that it was seeking an upward departure and a variance sentence. That's not a procedural problem at all, is it? I think the problem here is where the district court didn't say how much of the upward — how much of the sentence reflects the departure versus the variance. But if you read the guidelines, the guidelines were 18 to 24 months, right? Yes, Your Honor. And so then at the point at which he's conducting the sentencing, he says, look, I'm going to grant the government's motion. He explains why he was imposing the maximum sentence. Does that answer the question of the extent of the upward departure? Well, Judge, as I read this Court's case law, and again, you know, you all are certainly more experts on your case law than I am. Well, in any event, I see it that the judge is supposed to say, because there are different standards of review that applies to departures versus variance, I'm granting X number of months as a variance and X number of months as a departure, so that you all are crystal clear as to which standard of review applies when you're reviewing a sentence. And so here the district judge didn't say that, and I'm saying that he should. Couldn't a judge say, well, I'm going to grant the upward departure motion and then go right into 3553A without saying how much the guidelines would change? Because I thought the process was correct, compute the guidelines, then consider upward and downward departures. And he says, I'm going to grant it. Then he goes on to explain the variance aspect of the sentence. Right. Would that be sufficient precision? Is the judge required to say, I'm granting 10% upward departure, and the guidelines now would be 36 months? I mean, are they required to do that? Well, I mean, again, Judge, in the sentencing hearings that I've done, you know, the judge will say, you know, I'm going to get 10 months as a departure, and I'm going to give you 20 months as a variance or whatever. And so, you know, again, whether that is atypical, I mean, obviously, you've conducted far more sentencing than I have done. That's why I don't know. But I certainly don't see any reason why we shouldn't do it that way so that it's crystal clear on review what you all are doing. Counsel, I don't understand. I thought we held in this Diosdado Star case that it really doesn't make any difference. You don't have to do the departure first. And the reason is that it really doesn't affect the standard of review. Like, either way, we're looking for an explanation. And if there's an explanation here, that will justify the degree of the deviation, whether it's departure, variance. Like, we're asking the same question. So why does it matter? Well, so I would say that it becomes most acute, for example, when you have a case where the judge is going above the guidelines sua sponte, because under the rules you have to give advance notice to the parties of the court that is contemplating doing so. And so there it would be particularly important to know, well, are you actually going above as a variance or are you going above as a departure? And so I think that that's why we say you need to let us know sort of what's what so we can review on appeal what you did as a variance and as a departure. But to me, the biggest procedural problem here is when the judge says, I'm not going to make a finding that this is, in fact, a just sentence, where he just says, well, I don't know, I'm going to throw up my hands, because Congress has explicitly directed the judge, you have to decide this in each and every case. And so I disagree with the government that it is a subjective inquiry. I think that if it were, you know, each case is totally different, then Congress wouldn't have put that in the statute. But because Congress has explicitly directed district courts to make a finding about justice, and in Carter this Court held that you all do not make findings about the statutory factors in the first instance, because the district court failed to make the affirmative finding here, I think that's in and of itself a reason to send it back down so the district court can put its reason on the record and then you all can review it for abuse of discretion. But I don't — but under Carter, you all say that you all have the right to review those factors in the first instance. Now — Kennedy. Is the judge required to say each of the 35, 338 factors in the sentencing? Waxman. The judge has to indicate that he has considered all of them. And so, you know, here he says, I'm going through all the factors, but I'm going to find that I can't make a finding one way or the other about is this a just punishment. And to me, that's the most important factor of all of the factors is we want judges to dismiss justice. But he did refer to his prior record. He referred to protection of society, the nature of defense involving weapons. Isn't that sufficient? Well, Judge, we have several factors, you know, and one of them is just punishment for this offense. The other is, you know, to make sure that society is protected, you know. And so I think here we're asking about sort of this concept of justice. And given everything else that's going on, you know, for example, he's going to give this guy twice the sentence that he would have had if he would have brought in T&T to an airport. And so, again, I think that, you know, that Mr. Grant has a right to make sure that the district court has adequately considered that factor. But he brought a gun within a school zone. Correct. But as I point out in my brief, if you look at other things Mr. Grant could have done, if he would have brought T&T into an airport, he could only get five years. But here he brought in a gun to a school zone, he gets twice the amount of punishment for bringing in T&T to an airport, which is far more dangerous. Or if he would have been carrying anthrax, he could have gotten the same punishment, which is a whole lot more dangerous than just carrying a gun into a school zone. And, again, you know, Congress has ---- I think there are some people that would say guns in school zones are just as dangerous. People in Columbine and Newtown would probably say that. Your red light is on. You have some time in rebuttal. Thank you. Mr. DeHart? May it please the Court, Judge Thacker, Judge Harris, Judge Leahy, it's an honor to be back in Richmond. And at the outset I would like to agree with Judge Lee, and I think he made the government's point for us in a sense, that this is anything but clear or obvious. This issue regarding the special assessment and the supervisory release for this statute, it is unclear. And as we noted in our brief, this identical case was addressed last year by the First Circuit and Alvaro Sanchez. It was an identical fax. The defendant, like Mr. Grant and Alvaro Sanchez, was sentenced to three years supervisory release and $100 special assessment for this same statute. He failed to raise it on appeal. And like Mr. Grant, for the First Circuit, he argued that under this section in 924A4, the term of supervisory release and special assessment were incorrect. And the First Circuit held that it was not plain error and noted several reasons why. I will take issue with one thing that Mr. Anderson said. Mr. Anderson claimed that the court in Alvaro Sanchez did not reach that issue. That's absolutely not the case. They held specifically that it was a confusing issue because the defendant raised it below. It was not plain error, so they did reach the issue. May I ask, does the government have a position on what the statute means if we were not under plain error review? What's the government's position? Your Honor, forgive me. I'm not trying to be coy. It's such a confusing issue that I'm scared to offer an opinion. I don't want to bind my colleagues, and I don't want to bind the solicitor. The government does not have a position on this, that you are free to share. Your Honor, I honestly don't know. It is an obscure clause at the end of section 924A.  So if it wasn't, if we weren't here on plain error review, you might be agreeing with Mr. Anderson? I'd say it would be a lot closer call, Your Honor. I'm not, again, I'm not trying to be coy. I'm not certain what that passage means. I am certain it's not plain error, and Your Honor doesn't have to reach it today. I think you could read that in a couple of different ways. I have my own sort of personal opinion on what it means, but. But, I mean, the first prong of plain error review, right, is was there an error? So I'm just trying to go through the prongs, and I don't understand. Can you explain to me what else the statute could mean? It does say, except for this one purpose, for purpose of any other law, this is a misdemeanor. So it seems pretty clear. It seems pretty clear, Judge. I think that. I mean, at least agree that's the better reading. I think it's a close call because I think if you look at the entire rest of the criminal code, it is such an extreme example, as Judge Lee noted. The defendant could be sentenced to 10 years in prison, pay no special assessment, and only have one year of supervised release. That just seems like such a counterintuitive result. Well, what do you think Congress did have in mind? Your Honor, I have. I mean, it does seem counterintuitive to me, too, but I don't know what else this language could possibly mean. I just don't want to bind my colleagues. I have a suspicion, but I don't want to bind the Solicitor General's office. I just am absolutely certain it's not plain error. And if you stretch my arm, I'll tell you what I think it probably means, but I don't, you know, it doesn't. I think for today's purpose, you don't have to reach the issue. I really do. Has your office contacted the Department of Justice about this case? No, ma'am. All right. But we should focus on cases of controversy, this case, not others. Is that right? Yes, yes. And I would note, you know, specifically, this issue was addressed and decided by the First Circuit in a publicist's opinion last year, identical facts, and they held it was not plain error. And not only that, Your Honor, look at every Article III judge, Article III court that I've found that has addressed this issue has treated possession of a gun in a school zone as a Class D felony for purposes of supervised release and $100 special assessment. Very briefly, the First Circuit in Alvarez, Sanchez, and Castano, the Fifth Circuit in the United States v. Handy, and there were two district court opinions within the Fourth Circuit last year, the Huff case in the Western District of North Carolina, the Wright case in the District of South Carolina. In all five of those cases, the defendants were sentenced to three years' supervised release and a $100 special assessment for possessing a gun in a school zone. The defendant can't cite one Article III court that says otherwise. So the fact you've got the overwhelming amount of case law out there that disagrees with Ms. Grant's position seems like by definition it can't be plain error. And I would also like to bring Your Honor's attention to a court that we – to a case that we cited in our brief. I wish I would have flustered out a little bit more because I think this does decide the appeal. The decision is United States v. Corkhorn. We did cite it in our brief. It was a 2013 published decision by the Fourth Circuit. And in Corkhorn, I think Judge Lee would appreciate this, in Corkhorn the First Circuit – the Fourth Circuit said if the Fourth Circuit has not addressed an issue, quote, a district court does not commit plain error by following the reasoning of another circuit. Again, if the Fourth Circuit has not reached the issue, a district court does not commit plain error by following the reasoning of another circuit. And that's exactly what happened in this case. I'm sorry, which circuit reasoning? Your Honor, if the Fourth Circuit has not addressed the issue, a district judge within the Fourth Circuit does not commit plain error by following the reasoning of another circuit. And which – which circuit are we looking to for the reasoning of another circuit? Alvarez-Sanchez, the First Circuit decision. No, but the First Circuit just says it's not plain error. Like the district – I know the standard you're talking about, but I thought what you would have to find is a circuit court that reads the statute and says the district court thought it meant. Not that it's not plain error to come out that way. It just seems very recursive. Well, it is, Your Honor. But if you look at the other decisions, the United States v. Handy and the Fifth Circuit, granted that they didn't address issues specifically, but they did uphold a sentence. But it says follow the reasoning of another. I mean, I actually have – I feel that – Corkhorn? Yes. I would be very nervous about expanding that rule to mean if you can find some court that did this without considering it, that's good enough. It's not plain error. That seems like a different – it's not exactly what it's saying. It may be, Your Honor. But put yourself in Judge Norton's shoes. All right. At the very least, he followed the reasoning of the district court in Asheville in the Huff case and Judge Blatt in Charleston in the Wright case, who in both those instances, the defendant was sentenced to three years supervised release and a $100 special assessment for possession of a gun in a school zone. How could that be plain error when every other court out there that he's aware of reached the same conclusion? Can you just respond quickly to the defendant's argument that, look, whatever plain error means in other contexts, here we have a statute that is at least alleged – I'm sorry, a sentence that is allegedly outside the statutory maximum and that that is something we should address, even if it hasn't been objected to below. Your Honor, I think you hit the nail on the head when you noted that the rule of lenity doesn't apply in the plain error context. And I would take the position that it is, to the extent you consider it, you would consider it under the fourth prong of plain error. And in this case, Your Honor, even if there was an error and even if it was plain, which it was not plain, but we would argue that the Court should not notice the alleged error. You know, the Four Circuits made clear since the Jarvis decision that the plain error is one of the egregious errors in which, quote, a miscarriage of justice would result. If you look at the big picture in this case, Mr. Grant is arguing about a relatively short term of supervised release and a $100 special assessment. We're not making light of the law. The supervised release violation can result in deprivation of his liberty. It may be an illegal sentence. It was outside the statutory maximum. Is that right? Your Honor, I don't believe that it was. But I would note, if you want to consider whether a miscarriage of justice occurs here, if you look at what happened, Mr. Grant was allowed to plead guilty to lesser charges. Under the indictment, he faced a mandatory minimum of 15 years' imprisonment and 5 years' supervised release and $300 on special assessment. Based on this favorable plea agreement, he only got 3 years' supervised release. So if you look at that, how could this be a miscarriage of justice in this context? I'm not saying in every situation. No, I mean, I think that argument is, for me, more appropriate on the reasonableness of the sentence and the departure variance. But as it relates to the legality of the sentence, as defense counsel said, if the statute does not authorize more than 1 year's supervised release, then if it's a 3-year term, it exceeds the statute. Wouldn't that be illegal? Your Honor, assuming everything that Mr. Grant says was accurate, which we don't think it would be, that might be an illegal sentence. But also, Judge Lee, if you do look at what he was facing, he was facing 5 years' supervised release under the indictment. He got a great deal. I don't doubt that. He got a great deal. So, I mean, if you're asking whether it's a miscarriage of justice if he got 3 years' when he was looking at at least 15 years' imprisonment, 5 years' supervised release, and $100 special assessment, how could it be a miscarriage of justice even if there was a mistake if he ended up just getting 3 years' of supervised release and $100 special assessment? I realize the two arguments, Glenn, Your Honor, and that does go largely to the reasonableness of the sentence, but how would you like to go through the second part of it in terms of whether the judge has to set forth the extent of the departures? Because he was given notice of the upper departure. He was, Your Honor. I filed a motion for an upper departure and a variance, and I provided notice to the defense counsel prior to the plea that the government would file at the appropriate time a motion for an upper departure and an upper variance. And I just quite frankly disagree with Mr. Anderson so vigorously about that. There's no need, in our view, for a district court, if the court makes a notice on the record saying I'm going to depart upward pursuant to this guideline provision, I'm going to vary upward pursuant to these 3 or 4, 35, 53 factors. There's no reason for a district court to say, well, 36.2 of my upward sentence was based on the departure and 64 percent was based on the variance. There's no case law that would have to do that. And that seems like that would be unfair. And we noted in our brief the four circuits made clear that a district court is not required to robotically click through every 35, 53 factor. I'm not aware of any case out there that says that a district court has to explain and break it down as a percentage. That just seems like an absurd procedure. Like Judge Norton would have to say, well, 42 percent was the departure, 72 percent was the variance. There's just no case law to support that, and it seems like that would be unworkable. And, Your Honor, we'd also argue the fact that Judge Norton was so careful in this sentence and he made clear that he was both departing upward and varying upward. That should give this court more comfort. It shows a greater degree of deliberation and a greater degree of carefulness. And as to the ultimate sentence, Your Honor, as you all know, Judge Norton, we would argue, did not abuse his discretion whatsoever. He explained this sentence at sentencing. His explanation takes up more than five pages of the sentencing transcript. It's a very lengthy explanation. He goes through each 35, 53 factor that he thought was relevant. He discussed the seriousness of the offense, the history of Mr. Grant, the need to protect the public, the fact that he was an armed career criminal. It's hard to imagine a district court that went into more detail about explaining an upward departure and an upward variance. I just don't know for the life of me what Judge Norton could have done differently and I would take issue. I appreciate Mr. Anderson's vigorous advocacy. I just don't know how in the world a district court has to segregate out a departure versus a variance. I just think they have to explain their sentence, explain it thoroughly, make sure it's reasonable, and Judge Norton did all of that. Your Honor, lastly, as to the ultimate reasonableness of the sentence, we realize that 10 years in prison and three years supervised release is a lengthy sentence. But if you look, there are three factors I'd ask Your Honor to consider in determining whether it was a reasonable sentence. Number one, Mr. Grant has quite a bad record. He's a criminal in History Category 6. At the time, it was undisputed he was an armed career criminal. If you look at the egregiousness of the crime, it's not a garden variety felon in possession case. Mr. Grant possessed three separate handguns on three separate occasions within one year. As Judge Norton noted, on two of the occasions, he failed to stop for a blue light. He fled from the police at high rates of speed at night. It was a very dangerous crime. The second incidence, he convinced his girlfriend to commit a federal crime and buy a handgun for him. So it was a very egregious offense. And lastly, Your Honor, it's undisputable at the time that Mr. Grant was an armed career criminal at the time and he faced a mandatory minimum of 15 years. The fact that Judge Norton gave him 10 years and three years supervised release in our view makes clear that the sentence was reasonable under any standard. Having said that, Your Honor, I have a few more minutes left. I'm happy to answer any questions Your Honor have. Thank you very much. Thanks. All right, Mr. Anderson. Thank you, Your Honor. Just briefly, a couple of points in rebuttal. First, I didn't hear a reason from the government as to why we shouldn't just say definitively now what the statute means rather than waiting until 2255. So, you know, again, efficiency of the taxpayer seems always like a good policy for the court. But secondly, in terms of the standard of review, I would note that in the Silas case from the Fifth Circuit that I cited, 227F3D244, there the Fifth Circuit says that because, quote, because the sentence, so here it involves a challenge to the statutory maximum, which was not raised below. And so the Fifth Circuit says, quote, because the sentence which exceeds the statutory maximum is an illegal sentence and therefore constitutes plain error, our review of the issue presented in the appeal will be de novo, close quote. So in the Fifth Circuit, you know, again, if you're going to the jurisdiction of the court, we don't look to see whether we have, you know, it could be argued whether a jurisdiction exists or not. It either does exist or doesn't exist. And so, again, the Fifth Circuit would say that for that second part of the statute that this is not your typical plain error case where we're looking at, you know, could come out either way, either it is a legal sentence or it's not. And then going to, you know, what's the big deal here, I would note that Justice Thomas in his decision, in the majority decision in Aliani v. United States, which is talking about, as you know, sentencing guidelines, there he says, it doesn't matter for the purposes of the Constitution whether the jury, you know, found facts that would authorize a conviction for burglary, but the judge sentences him to larceny. You can only go with the sentence that the court, that the jury actually found. Here, he pleaded guilty, but it's the same principle here, that you can only convict based on the offense that's charged and the sentence that Congress has authorized for that offense. And here, if Congress did not authorize a term of three years, you can't impose it on him. As Judge Lee noted, there are significant consequences to a defendant who violates conditions of supervised release. Supervised release is part of the punishment for the offense.  It's part of the punishment, not for the purposes of appeal waivers, for example. So it's definitely part of the punishment of the offense. And so, again, the district court gave more punishment than Congress has authorized, and that's just not allowed under our system of laws, where judges have to follow the laws that Congress has drafted. And with that, unless there are any other questions, I'll be happy to stand on my briefs. Thank you, Mr. Anderson. Mr. Anderson, we recognize that you are court appointed and want to thank you for your service to the court and for your able representation of Mr. Grant. Thank you so much. We'll come down and greet counsel and then take a short recess. If it's not on before, we'll take a brief recess.
judges: Stephanie D. Thacker, Pamela A. Harris, Gerald Bruce Lee